### JACOB R. FUNCHESS et al. *v.* JOHN H. SEIBE et ux.

F. executed his last will and testament, which contained the following clause in substance, whereby he gave to his wife absolutely one third part of all his personal estate and two hundred acres of land to be taken off his lands in South Carolina, the land to be held by his wife, with remainder to his children. The third clause is in these words: " I order that my negroes, after the above-mentioned third are taken off, shall be equally divided among my children, though it is my wish that my property shall not be divided while

Funchess et al. *v.* Seibe et ux.

my wife remains a widow, or until one of my children becomes of age or marries, then it shall be divided without a sale of any of my negroes, so that the child who becomes of age or marries may get his or her part, and then the balance shall remain undivided until another of my children becomes of age or marries, then to be divided equally again, so that he or she may get their part, and so on in succession, until each of my children may get his or her part when they become of age or marry; though it is my wish when my negroes are divided, that the lot that Bordeau may be in shall not be drawn for while my wife remains a widow, or until my youngest child becomes of age or marries; it is my wish that my lands in South Carolina, after the two hundred acres are laid off before mentioned, be equally divided among my children when my first child becomes of age or marries, and their part appointed to them of said land; and if any of my children shall die without issue, the property shall return to my surviving children. My lands on Leaf River shall not be divided while my wife remains a widow, but shall be kept together for the good of my wife and children, though if my wife should marry, it is my will that it shall be equally divided between her and my children ; if my wife does not return to South Carolina to live, then I order that my lands in South Carolina be sold, and one third of the money arising from the sale of said lands I give to my wife, and the balance of the money shall be equally divided among my children ; my horses, wagons, and plantation tools shall be kept together for the good and support of my wife and children:"— *Held,* that the words "the property," in this clause of the will, embrace and relate only to the landed estate in South Carolina just before mentioned, and any other meaning given to them would be irreconcilable with the disposition of his property generally, as intended by the testator.

The will gives the testator's children an absolute estate in the slaves, and upon the allotment to Mrs. W. of her share of them, they became the property of the husband.

ON appeal from the superior court of chancery ; Hon. Stephen Cocke, chancellor.

The opinion of the court and the points made by counsel contain the facts of the case.

*Potter* for appellants.

Seibe and wife filed their bill against Funchess, claiming that Jacob Funchess, deceased, bequeathed certain slaves to his children, with a provision that if any of said devisees died without issue, their shares should go to the survivors. That the slaves were divided accordingly ; one share to appellant, one to

Mrs. Seibe, one to Mrs. Woodward, and one to each of the other children. That Woodward sold the share of his wife to appellant, and Mrs. Woodward soon after died without issue. That Mrs. Seibe and appellant are the only survivors, and she is entitled to one half of the slaves so allotted to Mrs. Woodward. Prays accordingly.

The first question arises upon the third clause of the will. It contains a provision that "the property" shall "return" to the survivors, in event of the death of any of the children without issue. We insist that this provision is limited to certain lands, whilst complainants contend that it includes the slaves.

The second clause gave a third of his slaves and personalty to his widow, and also a tract of land for life, remainder to his children.

The third clause provided that his slaves, after a third had been allotted to his widow, should be *equally divided* among his children; but no division to be made among them so long as his widow remained single, or until a child became of age or married. At the majority or marriage of any child, his or her share was to be divided off and delivered, and so on until full division.

Then follows this further provision in the third clause: "It is my wish that my lands in South Carolina, after the 200 acres are laid out before mentioned (to his wife), be equally divided among my children when my first child becomes of age or marries, and their part appointed to them of said lands, and if any of my children should die without issue, the property shall return to my surviving children."

It was further provided, in same clause, that certain other lands should, in certain events, be divided, or sold, and proceeds equally divided among his widow and children, &c.

We say that, although not so designated in the will, the clause above quoted is a distinct and separate sentence, and to be considered accordingly. As the will is written, this sentence appears as part of that next preceding; as does the sentence beginning with the words, "my horses and wagons and plantation tools," &c; so that beginning, "if my wife does not."

It is plain that testator did not intend that all of the devises to his children should depend on their death without issue. That provision clearly does not affect the limitation over, in clause two, after death of his wife; nor the subsequent provision as to other lands. The first tract vests, on death of the widow, unconditionally in the children. So the subsequent provision as to lands on Leaf River, is without any such limitation. Then why should the limitation be applied to the slaves, when there is no such general intent as to all the property devised to the children?

It will be noted that the slaves are to be kept together, and the share of each child parcelled out and delivered as he or she marries. Not so as to the particular land subject to this limitation. That land is to be equally divided among all the children, upon the majority or marriage of the eldest; and there might be good reasons for the distinctions thus made in the will. The testator had six children; and if appellee's construction be received, then the slaves are so limited, that an absolute title to any cannot vest until some child dies with issue; and if all die without issue, there is no further disposition of the slaves by this will, and they would pass under the general acts of distribution. There seems no reason to hold that such was the intent of the testator.

Under our code, (Hutch. 610, § 26,) the words "should die without issue," are held to relate, if the contrary is not plainly declared, to the date of the death of the devisee. So that, by force of the statute, this clause of the will must be construed as though the words had been, "should die without issue living at his or her death." And this is the extent of this clause. Now suppose the will had in fact been so written, what would have been the result, — a result not at all affected by the section referred to?

It has been held, that such language in a devise creates an estate tail. *University of Oxford* v. *Clifton*, 1 Eden, 473; 4 Kent, Com. 11; *Bells* v. *Gillespie*, 5 Rand. 292.

By force of another clause of the statute, (Hutch. 609, § 24,) this estate tail becomes an estate in fee. But it was a conditional estate tail, and would become a conditional fee, depend-

3 *

Funchess et al. *v.* Seibe et ux.

ent upon the devisee's leaving issue at his death.   This is precisely a conditional fee at common law.   But again, by force of said twenty-fourth section, the estate is discharged of all conditions annexed at common law, and the estate is to be regarded · as "a pure and absolute fee."   The proviso in this section applies to lands only.   *Powell* v. *Brandon,* 2 Cushm. 364.

Upon a similar Virginia statute, Judge Lomax says: "In no case would the acts allow a fee or any other estate to exist, as a limitation upon the constructive fee, into which the estate tail was enlarged by the operation of the law."   1 Lomax, Dig. 27.

*A. R. Johnston* for appellees.

The slaves were the property originally of Jacob Funchess. He died in Covington county, leaving, as his heirs at law, Mary Seibe, (one of complainants,) Jacob R. Funchess, James J. Funchess, Caroline M. Funchess, Ann E. Funchess, and Rufus H. Funchess.   By the will of the ancestor, (Jacob Funchess,) he gives to his widow one third of his negro property, and one third of his household and kitchen furniture, &c., and then gives the rest and residue of his negroes to his aforesaid children, to be equally divided amongst them.

It is also provided by said will, that the said slaves devised to the heirs, should be divided as often as any one of the children should either become of age or marry; and that, should either one of the children die without issue, the share of that child should descend to the surviving children.

The slaves sued for in the bill were allotted, under the will of Jacob Funchess, to Caroline M. Funchess (who was then the wife of defendant Woodward).   It was about the 6th day of October, 1836, that Woodward married Caroline M., and in December of that year the division was made, and the slaves in controversy allotted to said Caroline M.

In the year 1841, (during the coverture,) Thomas A. Woodward, the husband of said Caroline M., made an absolute sale of the slaves of his said wife, to defendant Jacob R. Funchess, except the slave Samuel.   Funchess took possession, under his purchase from Woodward, his codefendant; has kept the negroes ever since, and refuses to divide them with complain-

ants. Now, it is alleged in the bill, that Caroline M. (the wife of Woodward) died in July, 1843, without issue surviving her, and, indeed, without ever having given birth to a child.

To this bill, there was a demurrer filed in the court below; which demurrer was overruled by the chancellor.

The only question in this case is, Was it erroneous to overrule the demurrer? This, of course, brings up the whole merits of the case; and the demurrer confesses the facts to exist as they are stated in the bill.

Now, I submit, that the sale by Woodward to defendant Funchess, was a nullity. Caroline M., the wife, had, at marriage, under the will of her father, only an absolute life-estate. If she had given birth to children, the property would, by the will, have descended to her offspring. But she died without issue, after this absolute sale had been made by her husband. Under the will, the property reverted to the surviving heirs of the testator, the complainant, Mary M. Seibe, and defendant Jacob R. Funchess, — all the other children having died.

Woodward had no authority to sell any interest in the slaves, except, perhaps, the lifetime interest vested in his wife. It is too plain for argument, that whenever Woodward's wife died without heirs, (and she did so die,) that the complainants in the bill were entitled to one half of the share in said slaves allotted to Woodward's wife, Caroline M.

It was not in the power of Woodward (the husband) to defeat the provisions of the will, by an absolute sale of the property. He had no right thus to sell; because he knew that, unless his wife had children, her share of the negroes would go to the surviving heirs of Jacob Funchess.

Now, Jacob R. Funchess, the vendee of Woodward in this unauthorized sale, is one of the heirs. He, certainly, knew the condition of affairs, and could not have been deceived by his purchase. Nor can he be sustained in any such combination to defeat the rights of complainants, under the will of Jacob Funchess, deceased.

The will is regular and legal. It is duly probated. And the property has, from time to time, been divided, in accordance with the provisions of the will.

*T. J. & F. A. R. Wharton,* for appellants, in reply.

The counsel for appellee assumes a construction of the will, and upon that files his bill, and from that draws his conclusion that appellees are entitled to the relief for which they pray. We take issue *in limine* upon that construction, and insist that the remainders secured to the surviving children of the testator, in the portions allotted to those of them who should die without issue, applies alone to the real estate denied by the will, and to but a portion of that in a single contingency. The counsel, on the other side, begs the gravamen of the controversy when he assumes that the remainders apply alike to the personal and real estate.

It will be observed by your honors, and I invite particular attention to the fact, that the will is first taken up with the disposition of the personal estate. The mind of the testator seems to have been solely occupied with that, whilst it was undisposed of. The only exception to this remark will be found in the provision made for his wife in the second clause, and even there, he goes on to specify what personal property, even to articles of furniture, stock of hogs and cattle, she should have, before he devises to her any portion of the realty. He then gives her two hundred acres of land, and the buildings thereon, in the State of South Carolina. There is another striking feature in this clause, and one which, we think, strongly supports our construction of the whole will. It is this. He creates no remainder over to his children in the personal estate given to his wife, in the event of her death, leaving a husband, or children of another marriage surviving her. He gives it to her absolutely, and in fee. On the other hand, he expressly provides that the land and buildings thus given her, should, at her death, descend to his children. After he has allotted to his children their several interests in his personal estate, he then proceeds to dispose of his lands. This occurs, it is true, in the same section, or clause three, in which he directs in what manner his children shall be provided for, as to his personal estate. It is, however, near the close of the section, and after having fully disposed of all his negroes. Though he did not make that portion of said clause a separate and distinct one, and though it is not even separated

Funchess et al. *v.* Seibe et ux.

by a colon, or semicolon, from the antecedent member of the clause, it is obvious that it is an independent, substantive provision, and that the limitation or remainder over expressly applies to that, and that alone.   The sentence relating to the disposition of his negroes amongst his children, most clearly terminates with the words " until my youngest child becomes of age, or marries."   Then follows these words, " It is my wish that my lands in South Carolina, after the two hundred acres are laid out before mentioned, be equally divided among my children when my first child becomes of age, or marries, and their part appointed to them of said lands; and if any of my children should die without issue, the property shall return to my surviving children."   That is the first mention made in the will of remainders to his children.   He then returns to the land in South Carolina, two hundred acres of which he had, by the first clause, given to his wife during her life, with remainder to his children, at her death.   And in disposing of this residue of said land in South Carolina to his children, he declares, that in case of the death of either without issue, his or her share shall go to the surviving children of the testator, thus preserving the same rule in respect to the shares of the children in said land, in the event of the death of any of them without issue, which he had established in respect to the portion of said land which he had given to his wife.   Now the whole matter is perfectly plain, if you will transpose this member of the third clause, in relation to the devise to his children in said land, and put it in juxtaposition with the devise to his wife in the second clause to the same land.   But the argument does not stop here. There is other internal and irresistible proof that our view is the correct one, and that there is nothing to support the construction of the will contended for by adverse counsel, and upon which the bill was filed, but the failure to punctuate the third clause; fault of copy, doubtless.   Notice now, if your honors please, the continuation of that third clause from the point we have been considering.   He proceeds to dispose of his other lands.   He directs that they shall not be divided whilst his wife remains a widow, but shall be kept together for the good of his wife and children.   If his wife marries again, they shall be

equally divided between her and the children.  If his wife did not return to South Carolina to live, then he directs that his land in South Carolina should be sold, and one third of the money arising from the sale be given to her, and the balance equally divided between or among his children; the horses, wagons, and plantation tools, to be kept together for the benefit of his wife and children.

It has already been seen that the only limitation or remainder over created in the second clause in relation to his wife, applies to the land there given her; the personal estate being given to her absolutely.  So, too, as to the disposition of his land on Leaf River, referred to in the third clause, no limitation whatever exists.  They are not to be divided, if his wife remains a widow.  If she marries again, they are to be sold, and his wife and children have equal shares of the proceeds of the sale.  So as to the land in South Carolina, if she did not return there to live, then said land was to be sold, and she receive one third of the proceeds of such sale, the balance be divided amongst his children.  The difference thus made in the division of the proceeds of the sale of the land on Leaf River, (in this State,) which was to be sold in case his wife married again, and of those of the land in South Carolina, which were to be sold in case she did not return there to live, arose, we presume, from a disposition to conform to the statutes of each State regulating the descent of property of those dying intestate.  In the one, she receives a child's part of the proceeds; in the other, a third.  But there is another thing to be noticed in endeavoring to ascertain the true exposition of the intention of the testator.  It is this.  Whenever, in the will, a sale of the lands is provided for upon the contingency imposed, the proceeds of sale vest absolutely in the wife and children, no survivorship or remainders being contemplated.  So soon as the real estate is converted into personalty, or assets, it is stripped of all the limitations thrown around the devises of the land itself.  This is shown on the face of the will.  We think it affords a very satisfactory test of the intention of the testator to impose no restrictions upon the bequests of personal property.  In the event that the land itself in South Carolina descended to

the children, they were to take it subject to the limitation. The testator seems, for some reason, to have desired that it should be entailed, provided the contingency for its sale did not occur. But the very moment that contingency does occur, the proceeds are not to be used in the purchase of other property to be held subject to similar limitations, but vest equally and absolutely in the children. There are not less than three distinct provisions in the will upon the subject of the land in South Carolina. The first occurs in the second clause in which two hundred a cres, and the buildings thereon, are given to the wife, with remainder to the children. 2d. If the lands had been sold since the testator left South Carolina, she was to have absolutely, and in her own right, one third of the proceeds of sale. 3d. That the residue of said land, after said two hundred acres are laid out, should be divided equally between the children when the first is of age, or marries, and if either died without issue, his share should return to the surviving children. 4th. If the wife did not return to South Carolina to live, the said land to be sold, she to receive one third of the proceeds, the balance to be equally divided between the children. We think, therefore, that the only case in which limitations or remainders are created by the will, is on the land in South Carolina; and only on that, after the two hundred acres, given by the second clause, are laid out to the wife, and the residue divided amongst the children. And that again involved another condition, to wit, that she returned to South Carolina to live, for if she did not return there to live, then the whole of said lands (said two hundred acres included) were to be sold. No remainders whatever are created as to the other lands, those on Leaf River. The words upon which adverse counsel rely to show that the whole estate passing by the will, was to be held subject to remainders, namely, " and if any of my children should die without issue, the property shall return to my surviving children," it will be noticed, occur but once in said will, and that immediately in connection with the disposition of the lands in South Carolina. There is no escape from the conclusion that it applies solely to that land, and to no other property passing by the will. Why shall we suppose that the testator designed to adopt a different

Funchess et al. *v.* Seibe et ux.

rule in respect to remainders as to the personal estate (the negroes) from what he did with reference to the lands in Mississippi, whether they descended in kind, as in case the wife died without marrying again, or were sold, (as in case she did marry again,) and the proceeds equally divided amongst the children, or in reference to the lands in South Carolina, as in the case she did not return there to live, they were to be sold, she take one third of the proceeds, the children the other two thirds equally?

It is positively certain, that as to the negroes given the wife, there is no remainder in favor of the children. So as to her share of the proceeds of the sales of the lands. We can see nothing in the provisions of the will leading us to suppose that a different rule was adopted in respect to others, and with confidence submit that our construction of the character of the will is the true one.

Mr. Justice HANDY delivered the opinion of the court.

The appellees filed their bill in the superior court of chancery, to recover certain negro slaves and their hire, alleged to be the property of the complainant's wife, under the will of her father, Jacob Funchess, deceased. They allege that the testator bequeathed the slaves to his children, with a provision that, in case of the death of any of them without issue, their shares provided for in the will should go to the survivors; that the several shares were allotted to the children, six in number, respectively, including Mrs. Woodward, who was one of them, and whose share was set apart in the year 1836; that Thomas A. Woodward, her husband, made an absolute sale of the slaves to the appellant in the year 1841; that Mrs. Woodward died in the year 1843 without issue, and that Mrs. Seibe is the only surviving child of the testator, except the appellant, and entitled to one half of the slaves.

The provisions of the will are in substance as follows.

By the second clause, he gives to his wife, absolutely, one third part of all his personal estate, and two hundred acres of land, to be taken off his lands in South Carolina; the land to be held by her for life, with remainder to his children.

The third clause is in these words. " I order that my ne-groes, after the above-mentioned third are taken off, shall be equally divided among my children," naming them, " though it is my wish that my property shall not be divided while my wife remains a widow, or until one of my children becomes of age or marries, then it shall be divided without a sale of any of my negroes, so that the child who has become of age or marries may get his or her part, and then the balance shall remain undivided until another of my children becomes of age or marries, then to be divided equally again, so that he or she may get their part, and so on in succession until each of my children may get his or her part when they become of age or marry, though it is my wish, when my negroes are divided, that the lot that Bordeau may be in shall not be drawn for while my wife remains a widow, or until my youngest child becomes of age or marries ; it is my wish that my lands in South Carolina, after the two hundred acres are laid off before mentioned, be equally divided among my children when my first child becomes of age or marries, and their part appointed to them of said lands; and if any of my children should die without issue, the property shall return to my surviving children. My lands on Leaf River shall not be divided while my wife remains a widow, but shall be kept together for the good of my wife and children, though if my wife should marry, it is my will that it shall then be equally divided between her and my children; if my wife does not return to South Carolina to live, then I order that my lands in South Carolina be sold, and one third of the money arising from the sale of said lands I give to my wife, and the balance of the money shall be equally divided among my children; my horses and wagons and plan-tation tools shall be kept together for the good and support of my wife and children."

The appellants demurred to the bill, on the ground, 1st, that Mrs. Woodward took an absolute estate to the slaves under the will, which became vested in her husband by marriage; 2d, the bar of lapse of time, and the statute of limitations. This demurrer was overruled, and this appeal taken.

The controversy here depends upon the construction of the

words, " and if any of my children should die without issue, the property shall return to my surviving children," contained in the third clause of this will. This bill is based upon the construction that the words " the property," in this clause, relate to and embrace the whole property of the testator, bequeathed to his children; while, on the other hand, the appellants contend that they refer only to the lands in South Carolina, just before mentioned. We think the latter the proper construction, for the following reasons.

First. By the second clause of the will, one third of the entire personal estate of the testator is bequeathed absolutely to his wife; and by the third clause, he directs that his slaves, after his wife's third shall be taken off, shall be equally divided among his children, who are to get their parts as they respectively become of age or marry. If the construction contended for in behalf of the appellees be correct, it would either be repugnant to the second clause giving one third of his personal estate to his wife absolutely, or the bequest to his children would pass a different estate and a less interest than is left to the wife; to the children, a mere life-estate in the share to which each of them should be entitled, unless the child should have issue, and on failure thereof, with remainder to the survivors; but to the wife an estate of absolute property. The provision in favor of his wife is clear by its express terms; and it is not to be inferred, from the doubtful language of the third clause, that he intended his children to take a less estate than was given to his wife. Such a disposition would naturally tend much to the disparagement of his children in their advancement in life, by depriving them of the right of disposing of the property allotted to them, and of otherwise enjoying the full benefit of it; and it is not to be supposed that so unjust a discrimination was intended against them.

Secondly. The whole context and terms of the will, and particularly of the third clause, show that the expression, " the property," refers to the lands in South Carolina. The first part of this clause disposes of his slaves to his children in well expressed terms. Wherever he refers to his property generally, he uses the words " my negroes," " my property," " my lands,"

&c. After having disposed of his negroes in the first part of this clause, he proceeds to make provision as to the South Carolina lands, a distinct matter altogether from the other property mentioned in the clause, and in a manner entirely different from the disposition of his other property just before made, thus: " it is my wish that my lands in South Carolina, after the two hundred acres are laid out before mentioned, be equally divided among my children when my first child becomes of age or marries, and their part appointed to them of said lands," and adds, " and if any of my children should die without issue, the property shall return to my surviving children." Whatever doubt there might be upon grammatical rules as to the meaning of the words, " the property," we think there is none as to the plain sense in which they are to be understood. They are employed in immediate connection with the South Carolina lands, after the personal property had been disposed of and dismissed, and when both then and immediately afterwards the testator's mind was directed to the disposition of his lands. He uses terms of limited import, " the property," alluding to what was immediately in his mind, and not general terms, " my property," which he employs elsewhere in the will, where it is clear that he refers to his property generally. In this sense, the language is natural, and such as a plain man, expressing his thoughts in direct terms, would be likely to use; while, under the other construction, it is different from the phraseology employed in other parts of the will, and irreconcilable with the disposition of his property generally, as indicated in the will; and if it was his intention by it to alter that disposition, the part of the will in which he expressed the intention is strange and improbable. It is rather to be supposed, that if he had intended to make so material a modification of all the bequests to his children, he would have done so in the same plain and direct language in which he expresses his intentions in regard to the property bequeathed to his wife and children respectively in the other parts of the will.

Under this view of the subject, we are of opinion that the will gave to the testator's children an absolute estate in the

slaves, and, upon the allotment to Mrs. Woodward of her share of them, that they became the property of the husband.

The decree of the chancellor is, therefore, reversed, the demurrer sustained, and the bill dismissed.